IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| PARALLEL NETWORKS LLC, | § § § | |
| Plaintiff | § § | |
| vs. | § § | CASE NO. 6:10cv275 |
| | § | PATENT CASE |
| AEO, INC., ET AL. | § § | |
| Defendants | § § § | |

| | | |
|---|---|---|
| PARALLEL NETWORKS LLC, | § § § | |
| Plaintiff | § § | |
| vs. | § § | CASE NO. 6:10cv111 |
| | § | PATENT CASE |
| ABERCROMBIE & FITCH, ET AL | § § | |
| Defendants | § § § | |

| | | |
|---|---|---|
| PARALLEL NETWORKS LLC, | § § § | |
| Plaintiff | § § | |
| vs. | § § | CASE NO. 6:10cv112 |
| | § | PATENT CASE |
| BENTLEY MOTORS., ET AL. | § § | |
| Defendants | § § § | |

| | | |
|---|---|---|
| PARALLEL NETWORKS LLC, § § § Plaintiff § § vs. § § ADIDAS AMERICA, INC., ET AL § § Defendants § § | | CASE NO. 6:10cv491 PATENT CASE |
| PARALLEL NETWORKS LLC § § § Plaintiff, § § vs. § § ORIENTAL TRADING § § Defendants. § | | CASE NO. 6:10-CV-474 PATENT CASE |

**MEMORANDUM OPINION AND ORDER**

Before the Court are: (1) Plaintiff's Motions to Bifurcate Liability and Damages;[1] (2) Defendant Coldwater Creek's Motion to Sever and Transfer (6:10cv275, Docket No. 421); and (3) issues of case management. For the foregoing reasons, Plaintiff's Motions to Bifurcate are **DENIED**. The cases are hereby consolidated with 6:10cv111 as the lead case; thus, Defendant Coldwater Creek's Motion to Sever and Transfer is **DENIED as MOOT**. The remaining issues of case management are discussed more fully below.

---

[1] *See* Case Nos. 6:10cv111, Docket Nos. 307 & 315; 6:10cv112, Docket No. 65; 6:10cv275, Docket Nos. 398 & 407; and 6:10cv491, Docket No. 454.

## BACKGROUND

Plaintiff Parallel Networks, LLC ("Parallel") filed four separate actions, each alleging infringement of United States Patent No. 6,446,111 ("the '111 Patent")—Case Nos. 6:10cv111 ("the '111 case"), 6:10cv112 ("the '112 case"), 6:10cv275 ("the '275 case"), and 6:10cv491 ("the '491 case"). The '111 Patent, entitled "Method and Apparatus for Client-Server Communications Using a Limited Capability Client Over a Low Speed Communications Network," issued on September 3, 2002.

The '111 case proceeded to status conference on September 7, 2010. The '112, '275, and '491 cases proceeded to status conference on January 4, 2011. At the January 4, 2011 conference, the Court confirmed that Plaintiff sued approximately 124 Defendants across the four cases. The Court set a special status conference for all four cases on March 1, 2011 to discuss, *inter alia*, Plaintiff's litigation and settlement strategy, the possibility of staged trials, and the claim construction process. The Court invited the parties to offer suggestions for case management.

In addition, the parties in the '111 case filed a Joint Motion to Bifurcate the liability and damage portions of trial. 6:10cv111, Docket No. 307. The Court set this motion (which was later filed in all four cases and is opposed by some Defendants) for hearing at the March 1, 2011 special status conference.

At the March 1, 2011 conference, the Court inquired into Plaintiff's trial strategy. Specifically, the Court asked Plaintiff why it elected to sue such a large number of Defendants at once, as opposed to the more common approach of selecting a few target Defendants to proceed against first. Plaintiff responded that its strategy made sense from a cost view. In Plaintiff's

words, its strategy was "not to go after one defendant and ask for $30 million. It was our strategy to go after a lot of defendants, get those issues resolved, hopefully by settlement." (Tr. 3/1/2011, pg. 20, l. 17-20).

Indeed, Plaintiff stated that its goal in this case is twofold: first, "to settle as many defendants out under the terms that I have talked about"; second, for those who do not wish to settle, to adhere to the Court's schedule of a *Markman* in October and trial the following year. (Tr. 3/1/2011, pg. 31, l. 17-18).[2] To accomplish these goals, Plaintiff stated that its early settlement demands: (1) have been very reasonable; (2) are based on a small fraction of what it believes it could acquire through trial using a reasonable royalty damage analysis; and (3) are substantially less than what a Defendant would need to spend to bring its case to trial or *Markman*. (Tr. 3/1/2011, pg. 19, l. 9-16).

When the Court specifically inquired about what drives Plaintiff's early settlement demands, Plaintiff indicated that its process involves an analysis of Defendants' sales and Defendants' cost of defense. (Tr. 3/1/2011, pg. 25, l. 3-10). Plaintiff stated that in an offer of settlement scenario, it would start with a 2-3% reasonable royalty and multiply that by the entirety of a Defendant's website sales. According to Plaintiff, this is a Defendant's projected exposure. Then, Plaintiff would offer a deeply discounted demand "to make settlement very attractive" to the Defendant (Tr. 3/1/2011, pg. 25, l. 12-22).

The Court also inquired about Defendants' goals in this case. Defendants told the Court that they seek a cost-effective way to defend themselves from suits like these without being forced

---

[2] Of the 124 initial Defendants, Plaintiff had settled with 7 at the time of the status conference and had an unknown number of outstanding offers. Plaintiff has made settlement offers to well over half of the Defendants at this point.

to settle based upon cost of defense. (Tr. 3/1/2011, pg. 32, l. 13-17).[3]

## ANALYSIS

**Consolidation**

As a preliminary matter, managing these cases separately is cumbersome on the Court staff and the Clerk's office. To promote efficiency, the Court hereby consolidates the above cases.[4] Cause No. 6:10cv111 is the lead case. All parties are instructed to file any future motions in the lead case. The parties shall meet and confer and submit a proposed Docket Control Order and Discovery Order by March 31, 2011.

Accordingly, Defendant Coldwater Creek Inc.'s Motion to Sever and Transfer (Case No. 6:10cv421, Docket No. 421), which requested severance from the '275 action and transfer to the '491 action, is **DENIED as MOOT**.

**Case Management**

This Court has always endeavored to move cases toward an efficient and timely resolution on the merits of the case. The Patent Rules and docket control order are designed for this purpose.

---

[3] At the hearing, Plaintiff requested statements related to a specific settlement be redacted in accordance with confidentiality provisions in the settlement agreement. The Court granted Plaintiff's motion. Upon further consideration and review of the transcript, the Court **DENIES** the request for two reasons. First, the type of information requested does not fall into one of the categories of information traditionally redacted by this District. *See The Ohio Willow Wood Company v. Thermo-Ply, Inc.*, 9:07-CV-274, Docket No. 27 (Clark, J.); Transcript Procedures for Attorneys (2008); Local Rule CV-5.2. Second, it is difficult for the Court to ascertain which of the statements were subject to Plaintiff's redaction request. Therefore, instead the Court has sealed a portion of the transcript it believes falls under Plaintiff's request. In the future, the Court reminds the parties that it is each party's responsibility to inform the Court, if at all possible, *before* confidential information is disclosed in open court and request a sealed courtroom and record. The Court spent significant time and resources parsing through the transcript to determine what portions need to be sealed or redacted. This is the parties' responsibility.

[4] Upon receipt of a Notice of Bankruptcy by Defendant Oriental Trading ("Defendant") in Case No. 6:10cv275, the Court severed Defendant into Case No. 6:10-cv-474 and stayed that action. The Court ordered Defendant to file a notice in that case when the bankruptcy proceeding concluded. Defendant filed such notice on February 24, 2011. Accordingly, Case No. 6:10-cv-474 is included in the consolidation.

Thus, in a typical patent case, the Court's standard docket control order—with dates certain for *Markman* and trial and early disclosure requirements—helps promptly and economically facilitate these goals.

Plaintiff's strategy in this case, however, makes it unlike the typical patent case. Plaintiff has sued over 100 Defendants with the goal of early resolution of the disputes through settlement in a range that essentially amounts to litigation costs. In this case, the Patent Rules and the Court's standard docket control order—including early production of extensive electronic discovery—make defending the case almost cost prohibitive. With over 100 parties in these cases, even a simple joint proposed discovery order turns into hours of attorney communication—with that cost being passed on to the attorneys' clients.

While the Court will not comment on Plaintiff's strategy, when combined with the requirements of the Patent Rules and the Court's standard docket control order, Plaintiff's strategy presents Defendants with a *Hobson's* choice: spend more than the settlement range on discovery, or settle for what amounts to cost of defense, regardless of whether a Defendant believes it has a legitimate defense. Because the Patent Rules and the Court's standard docket control order do not achieve their intended result in this particular case, it is necessary to depart from them in an effort to accomplish both parties' objectives in the most cost effective manner.[5]

---

[5] Such a scenario is contemplated by the Patent Rules:

> The Court may accelerate, extend, eliminate, or modify the obligations or deadlines set forth in these Patent Rules based on the circumstances of any particular case, including, without limitation, the complexity of the case or the number of patents, claims, products, or parties involved.

P.R. 1-2.

At the March 1, 2011 status conference, the Court asked the parties for suggestions as to how to accomplish their goals. Defendants focused their suggestions on early resolution of common issues spanning all Defendants. Specifically, Defendants believe there are three claim terms that affect all Defendants which, if construed, would be case dispositive. Defendants requested an early *Markman* of these three terms coupled with a summary judgment motion limited to infringement issues involving these terms. Defendants' proposal included an opportunity after filing their motion for summary judgment for Plaintiff to conduct certain discovery needed to adequately prepare its response.

Plaintiff acknowledged at the hearing that there are certain terms that are important to the infringement case. Construction of these limited terms early in the case will resolve several important issues at a beneficial time for each party to better evaluate its case. Accordingly, the Court **ORDERS** Defendants to submit its three claim terms to the Court by March 31, 2011. The Court hereby sets a *Markman* and summary judgment hearing in this case for Tuesday, June 21, 2011 at 9:30 a.m. The parties shall meet and confer and submit a proposed briefing schedule by March 31, 2011.[6] All parties will be bound by the construction of these terms. If this claim construction and summary judgment process does not resolve this case, no party may reurge claim construction arguments related to these three terms. The Court hereby stays all discovery pending claim construction and summary judgment rulings by the Court, except discovery necessary for the narrow *Markman* and summary judgment motions.

---

[6] The parties shall also meet and confer and submit any Agreed or Proposed Technical Advisors to the Court by this date.

**Bifurcation**

Finally, all parties in the '111 case, and some, but not all parties in the remaining cases ask the Court to bifurcate liability and damages for purposes of discovery and trial. Those in favor of bifurcation argue that liability drives the dispute from all parties' perspective; thus, it is efficient to resolve liability issues first. Those who oppose bifurcation argue discovery about damages and Plaintiff's damage model is necessary for Defendants to evaluate their case. At the hearing, those who oppose bifurcation argued that bifurcation will not solve the problem of case management in this instance. Additionally, Defendants who claim to have no website sales stated that it would be unfair to be denied discovery on damages and Plaintiff's damage theory against them.

Certainly, with a case involving such a large number of Defendants, steps must be taken to efficiently manage the case. However, bifurcation of liability and damages is not the proper step in this case. Each party needs discovery related to damages to fully and fairly evaluate its case for settlement purposes. Accordingly, the Court **DENIES** the parties' Motions to Bifurcate (Case No. 6:10cv111, Docket Nos. 307 & 315; Case No. 6:10cv112, Docket No. 65; Case No. 6:10cv275, Docket Nos. 398 & 407; and Case No. 6:10cv491, Docket No. 454.).

**CONCLUSION**

Case Nos. 6:10cv111, 6:10cv112, 6:10cv275; 6;10cv491, and 6;10cv474 are hereby consolidated. The '111 case shall be the lead case. The parties' Motions to Bifurcate liability and damages are hereby **DENIED**. Coldwater Creek's Motion to Sever and Transfer (6:10cv275, Docket No. 421) is **DENIED as MOOT**. Finally, the Court sets a *Markman* and summary judgment hearing in this case for Tuesday, June 21, 2011 at 9:30 a.m. By March 31, 2011: (1) Defendants shall provide

8

the Court with the three terms they need construed; (2) the parties shall meet and confer and submit a proposed briefing schedule and proposed Docket Control Order; (3) the parties shall submit an agreed Technical Advisor or proposed Technical Advisors if they cannot agree. If the case is not resolved following the Court's claim construction summary judgment rulings, it is the Court's intention to hold the parties to their current October 13, 2011 *Markman* date, if needed, and September 4, 2012 trial date.

**So ORDERED and SIGNED this 15th day of March, 2011.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**